Keith A. Hebeisen
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

    Re:    *Hernandez, Lakitta v. Benatar*
            *Your File No. 07-0079*

Dear Mr. Hebeisen:

    I am a physician duly licensed to practice medicine in all of its branches, specializing and board certified in internal medicine, cardiology, electrophysiology and interventional cardiology. I have had significant experience with the standard of care, methods, procedures, and treatments relevant to the issues in the treatment of Lakitta Hernandez. I have devoted a majority of my work time to the practice of medicine in relation to the medical care and type of treatment at issue which gives rise to the medical problem of which Lakitta Hernandez complained. I am licensed in the same profession with the same class of license as Daniel Benatar, M.D. I have practiced within the last 5 years in the same area of healthcare or medicine that is at issue in this particular action. It is my opinion that there is a reasonable and meritorious cause for the filing of an action against Daniel Benatar, M.D. I have reviewed the records of Lakitta Hernandez from Mt. Sinai Hospital, Holy Cross Hospital and Mt. Sinai Medical Group.

    On August 8, 2005, Lakitta Hernandez presented to Mt. Sinai Hospital for complaints of chest pain and shortness of breath. She underwent a left heart catheterization; selective coronary angiography; left ventriculography; Perclose arteriotomy repair, right groin access performed by Daniel Benatar, M.D.

    On August 16, 2005, Lakitta was seen by Sandeep Khosla, M.D. for complaints of right groin pain, shortness of breath after walking half of a block and chest pain on exertion. The femoral and pedal pulses were noted to be normal, but there was peripheral edema to the lower extremities. Sleep and pulmonary studies were ordered.

    On August 19, 2005, Lakitta Hernandez was seen by Daniel Benatar, M.D. for complaints of pain in the right toe and shortness of breath. Physical exam noted normal pulses to the lower extremities.

    On August 23, 2005, Lakitta Hernandez presented to the emergency room at Holy Cross Hospital for complaints of swelling to her upper lip since 0200. She was seen by Paul Allegretti, D.O. and was diagnosed with an allergic reaction. She was given Benadryl 50 mg IM, Prednisone 80 mg PO and Pepcid. She was later discharged to home.

    On August 29, 2005, Lakitta Hernandez presented to Holy Cross Hospital emergency room for complaints of right leg pain, coolness, numbness and weakness. She was unable to walk. The emergency room records state that the right foot was cool and pulses were diminished. She was given pain medications and later discharged home.

1

On August 30, 2005, Lakitta Hernandez presented to Mt. Sinai Hospital at 10:43 p.m. with complaints of right foot pain, numbness and a bluish discoloration. Exam of the right lower extremity showed foot cold, bluish and dusky, no palpable or Doppler pulses in the right foot. She was diagnosed with right posterior tibial artery occlusion. She was given pain medications and Heparin in the emergency room and admitted to the hospital.

On August 31, 2005, Lakitta underwent an angiogram of the right lower extremity at ~0900-1152 which showed a thrombus at the site of her August 8, 2005 cardiac catheterization that extended to the right lower extremity with 100% occlusion. She underwent right lower extremity PTA tibio-peroneal trunk; Possis mechanical thrombectomy and angioplasty performed by Sandeep Khosla, M.D. The right foot remained pale, cool and dusky. Later that afternoon, Lakitta underwent surgery performed by Elizabeth Clark, M.D. for right lower extremity ischemia and cold pulseless right foot and severe pain. The surgery involved right lower extremity above/below-knee poplitcal exploration, arteriotomy, thrombectomy, intra-op angiogram, right dorsalis pedis artery exploration. A specimen of thrombus from tibio-peroneal trunk was obtained. At the end of the surgery, the right foot was noted to be warmer with improved capillary refill (~3 seconds) from pre operative exam. Doppler signals were very difficult to obtain. She was given 3 units of blood and a Heparin drip was started.

After the surgery, Lakitta's circulation remained compromised. She had ischemic changes to the right foot, status post embolization and thrombosis of the infra-popliteal, tibial peroneal trunk, following cardiac catheterization with failure of revascularization despite intra operative thrombectomy, heparinization, thrombolytic therapy (Urokinase x 24 hrs) and intervention AngioJet (in cath lab) and thrombectomy attempts in both the cardiac cath lab and IR suite had progressive ischemic changes and increasing white blood cell count with impending gangrene. On September 2, 2005, Lakitta underwent surgery for right below-the-knee amputation performed by Elizabeth Clark, M.D.

On September 7, 2005, Lakitta fell on to the right stump and developed traumatic dehiscence of right below-the-knee amputation incision with blistering to the posterior flap. On September 8, 2005, Lakitta underwent surgery for debridement and revision of residual limb. Lakitta developed epidermolysis to full-thickness skin loss with purulent drainage and necrotic tissue. On September 13, 2005, Lakitta underwent surgery for right above the knee amputation. She was given blood products.

On September 17, 2005, she was transferred to Schwab for rehabilitation. Lakitta Hernandez underwent extensive rehabilitation. She was treated for sepsis, adult respiratory distress syndrome, pneumonia, right thigh fluid collection and urinary tract infection. She underwent surgery for a tracheostomy due to respiratory failure.

Based upon my review of the aforesaid records and my training and experience, it is my opinion that a reasonable and meritorious cause exists for the filing of an action against DANIEL BENATAR, M.D., because he was negligent and failed to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified cardiologist on August 19, 2005, as follows:

a.   Failed to appropriately monitor LAKITTA HERNANDEZ's lower extremities and pulses;

2

b. Failed to appropriately examine LAKITTA HERNANDEZ's lower extremities and pulses;

c. Failed to order appropriate testing for LAKITTA HERNANDEZ;

d. Failed to timely treat LAKITTA HERNANDEZ for decreased pulses and decreased circulation of the right lower extremity;

e. Failed to perform a timely angiogram;

f. Failed to administer timely and proper anticoagulant treatment and obtain a therapeutic PTT before September 1, 2005 at 10:00 a.m.;

g. Failed to administer thrombolytics;

h. Failed to arrange for timely and proper surgery to obtain adequate return of blood flow to LAKITTA HERNANDEZ's right leg;

I. Was otherwise careless and negligent.

The aforesaid negligent acts and omissions were a cause of injury to LAKITTA HERNANDEZ, including her below-the-knee amputation of her right leg, subsequent above-knee amputation and the associated complications, rehabilitation and recovery from these surgeries

My opinions are subject to modification upon review of further materials.

Very truly yours,

John Lassetter, M.D.
710 Castlecrock Lane
Idaho Falls, ID 83404
Utah License # 177327-8905

 **BRIGHAM AND WOMEN'S HOSPITAL**

 **HARVARD MEDICAL SCHOOL**

Department of Emergency Medicine

75 Francis Street
Boston, Massachusetts 02115
Tel: 617.732.5640, Fax: 617.264.6848

Keith A. Hebeisen
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

    Re:    *Hernandez, Lakitta v. Hanna*
           Your File No. 07-0079

Dear Mr. Hebeisen:

    I am a physician duly licensed to practice medicine in all of its branches, specializing and board certified in emergency medicine. I have had significant experience with the standard of care, methods, procedures, and treatments relevant to the issues in the treatment of Lakitta Hernandez. I have devoted a majority of my work time to the practice of medicine in relation to the medical care and type of treatment at issue which gives rise to the medical problem of which Lakitta Hernandez complained. I am licensed in the same profession with the same class of license as Nagui Hanna, M.D. I have practiced within the last 5 years in the same area of healthcare or medicine that is at issue in this particular action. I have reviewed the records of Lakitta Hernandez from Mt. Sinai Hospital, Holy Cross Hospital and Mt. Sinai Medical Group.

    Ms. Hernanadez was a 45 year old woman at the time she presented to the Holy Cross Hospital Emergency Department on August 29, 2005 with complaints of right leg pain. She was seen by attending emergency physician, Nagui Hanna, M.D. Was noted to have a past medical history of hypertension, lung disease, heart disease, status post angiography on August 8th. Medications included lasix, lisinopril, atenolol, benedryl. Ms Hernandez was initially evaluated by a triage nurse at 2330 with a chief complaint noted to be right leg pain. Vital signs were documented as being unremarkable. Nursing notes report that patient complained of right leg pain after a nerve was hit during a procedure on August 8th. The patient was noted as having rales on respiratory exam, alert and oriented times 3, skin was warm and dry. Patient had normal color. Patient reported that the pain was a 10 on a 0 to 10 visual analog pain scale.

    Physician evaluation described chief complaint of pain in left foot which began 3 weeks ago after angiography with nerve injury; pain is categorized as moderate to severe and was made worse today with movement, patient was unable to walk and she reported numbness and weakness. Physical exam was notable for oxygen saturation of 99%, temperature of 98.3, blood pressure of 156/92, a pulse of 78, and respiratory rate of 20. She was noted to be in distress and obese, her skin was noted to be cool (the right foot and lower leg). Lungs had mild bi-lateral wheezing, neurologic exam was noted for sensory loss with right foot hypistesia, under extremity exam the box for negative is checked, and then the words absent, diminished, and not equal bi-lateral next to pulses are crossed out.

PARTNERS. HealthCare System Member

### ED Course

Ms. Hernandez had oxygenation measured to be normal, she had administration of ketoralac and morphine intra-muscularly twice, she had lumbar x-rays which were normal. She also received albuterol nebulization therapy. Prior to discharge her symptoms were noted to have improved with those medications and her vital signs were re-assessed and were re-assessed as normal, lumbar spine films were formally read as normal. Patient was discharged home.

### Analysis and Opinion

This is a patient who is status post angiography with access from the right femoral artery, who presented approximately 3 weeks after the procedure with right leg pain. Standard of care for an emergency medicine physician such as Nagui Hanna, M.D. in assessing a patient who has had angiography through the femoral artery requires evaluation and consideration of arterial injury which would include occlusion from an intra-luminal thrombus or external compression from a hematoma and pseudo-aneurysm. Evaluation would initially begin with a thorough history and physical exam which will include documentation of pulses in relation to normal and in relation to the contralateral extremity.

In this case, Ms. Hernandez presented with right leg pain with 3 weeks after angiography access through the right femoral artery. Physical examination based on the records provided to me are unclear. The skin of the right foot and lower leg is described as cool with decreased sensation. On the pulse exam there are "X's" through "absent", "diminished", and "not equal bilaterally" and then the box next to negative is checked. If this indicates that the patient had normal and equal symmetric pulses then I believe standard of care in the emergency care of a patient presenting with extremity pain after angiography was met and she required no further evaluation other than close follow up. On the other hand, if the notations on the physical exam are meant to represent that she had diminished or unequal pulses, then there is a reasonable and meritorious cause for the filing of an action against Nagui Hanna, M.D. because the standard of care was not met and would have required further evaluation in the emergency department which may have included vascular duplex ultrasonagraphy or angiography with or without consultation with the vascular surgeon. The failure to comply with the standard of care was a cause of injury to Lakitta Hernandez.

I submit these opinions to a reasonable degree of medical certainty and reserve the right to amend these opinions should new evidence be presented to me.

Sincerely,

Richard D. Zane, MD, FAAEM
Department of Emergency Medicine
Brigham & Women's Hospital
75 Francis Street
Boston, MA 02115
Massachusetts License # 157105

Keith A. Hebeisen
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

    Re:    *Hernandez, Lakitta v. Clark*
          *Your File No. 07-0079*

Dear Mr. Hebeisen:

    I am a physician duly licensed to practice medicine in all of its branches, specializing and board certified in vascular surgery. I have had significant experience with the standard of care, methods, procedures, and treatments relevant to the issues in the treatment of Lakitta Hernandez. I have devoted a majority of my work time to the practice of medicine in relation to the medical care and type of treatment at issue which gives rise to the medical problem of which Lakitta Hernandez complained. I am licensed in the same profession with the same class of license as Elizabeth Clark, M.D. I have practiced within the last 5 years in the same area of healthcare or medicine that is at issue in this particular action. It is my opinion that there is a reasonable and meritorious cause for the filing of an action against Elizabeth Clark, M.D. I have reviewed the records of Lakitta Hernandez from Mt. Sinai Hospital, Holy Cross Hospital and Mt. Sinai Medical Group.

    On August 8, 2005, Lakitta Hernandez presented to Mt. Sinai Hospital for complaints of chest pain and shortness of breath. She underwent a left heart catheterization; selective coronary angiography; left ventriculography; Perclose arteriotomy repair, right groin access performed by Daniel Benatar, M.D.

    On August 16, 2005, Lakitta was seen by Sandeep Khosla, M.D. for complaints of right groin pain, shortness of breath after walking half of a block and chest pain on exertion. The femoral and pedal pulses were noted to be normal, but there was peripheral edema to the lower extremities. Sleep and pulmonary studies were ordered.

    On August 19, 2005, Lakitta Hernandez was seen by Daniel Benatar, M.D. for complaints of pain in the right toe and shortness of breath. Physical exam noted normal pulses to the lower extremities.

    On August 23, 2005, Lakitta Hernandez presented to the emergency room at Holy Cross Hospital for complaints of swelling to her upper lip since 0200. She was seen by Paul Allegretti, D.O. and was diagnosed with an allergic reaction. She was given Benadryl 50 mg IM, Prednisone 80 mg PO and Pepcid. She was later discharged to home.

    On August 29, 2005, Lakitta Hernandez presented to Holy Cross Hospital emergency room for complaints of right leg pain, coolness, numbness and weakness. She was unable to walk. The emergency room records state that the right foot was cool and pulses were diminished. She was given pain medications and later discharged home.

1

On August 30, 2005, Lakitta Hernandez presented to Mt. Sinai Hospital at 10:43 p.m. with complaints of right foot pain, numbness and a bluish discoloration. Exam of the right lower extremity showed foot cold, bluish and dusky, no palpable or Doppler pulses in the right foot. She was diagnosed with right posterior tibial artery occlusion. She was given pain medications and Heparin in the emergency room and admitted to the hospital.

On August 31, 2005, Lakitta underwent an angiogram of the right lower extremity at ~0900-1152 which showed a thrombus at the site of her August 8, 2005 cardiac catheterization that extended to the right lower extremity with 100% occlusion. She underwent right lower extremity PTA tibio-peroneal trunk; Possis mechanical thrombectomy and angioplasty performed by Sandeep Khosla, M.D. The right foot remained pale, cool and dusky. Later that afternoon, Lakitta underwent surgery performed by Elizabeth Clark, M.D. for right lower extremity ischemia and cold pulseless right foot and severe pain. The surgery involved right lower extremity above/below-knee popliteal exploration, arteriotomy, thrombectomy, intra-op angiogram, right dorsalis pedis artery exploration. A specimen of thrombus from tibio-peroneal trunk was obtained. At the end of the surgery, the right foot was noted to be warmer with improved capillary refill (~3 seconds) from pre operative exam. Doppler signals were very difficult to obtain. She was given 3 units of blood and a Heparin drip was started.

After the surgery, Lakitta's circulation remained compromised. She had ischemic changes to the right foot, status post embolization and thrombosis of the infra-popliteal, tibial peroneal trunk, following cardiac catheterization with failure of revascularization despite intra operative thrombectomy, heparinization, thrombolytic therapy (Urokinase x 24 hrs) and intervention AngioJet (in cath lab) and thrombectomy attempts in both the cardiac cath lab and IR suite had progressive ischemic changes and increasing white blood cell count with impending gangrene. On September 2, 2005, Lakitta underwent surgery for right below-the-knee amputation performed by Elizabeth Clark, M.D.

On September 7, 2005, Lakitta fell on to the right stump and developed traumatic dehiscence of right below-the-knee amputation incision with blistering to the posterior flap. On September 8, 2005, Lakitta underwent surgery for debridement and revision of residual limb. Lakitta developed epidermolysis to full-thickness skin loss with purulent drainage and necrotic tissue. On September 13, 2005, Lakitta underwent surgery for right above the knee amputation. She was given blood products.

On September 17, 2005, she was transferred to Schwab for rehabilitation. Lakitta Hernandez underwent extensive rehabilitation. She was treated for sepsis, adult respiratory distress syndrome, pneumonia, right thigh fluid collection and urinary tract infection. She underwent surgery for a tracheostomy due to respiratory failure.

Based upon my review of the aforesaid records and my training and experience, it is my opinion that a reasonable and meritorious cause exists for the filing of an action against ELIZABETH CLARK, M.D., because she was negligent and failed to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified vascular surgeon on and after August 31, 2005, as follows:

a.  Failed to appropriately monitor LAKITTA HERNANDEZ's lower extremities and pulses;

2

b.  Failed to order appropriate testing for LAKITTA HERNANDEZ;

c.  Failed to timely treat LAKITTA HERNANDEZ for decreased pulses and decreased circulation of the right lower extremity;

d.  Failed to perform a timely angiogram;

e.  Failed to administer timely and proper anticoagulant treatment and obtain a therapeutic PTT before September 1, 2005 at 10:00 a.m.;

f.  Failed to administer thrombolytics;

g.  Failed to perform timely and proper surgery including a thrombectomy to obtain adequate return of blood flow to LAKITTA HERNANDEZ's right leg;

h.  Was otherwise careless and negligent.

The aforesaid negligent acts and omissions were a cause of injury to LAKITTA HERNANDEZ, including her below-the-knee amputation of her right leg, subsequent above-knee amputation and the associated complications, rehabilitation and recovery from these surgeries

My opinions are subject to modification upon review of further materials.

Very truly yours,

Preston Flanigan, M.D.
1140 W. La Veta Avenue, # 850
Orange, CA 92868
California License # G63532

3

Keith A. Hebeisen
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3100
Chicago, Illinois 60602

    *Re:*   *Hernandez, Lakitta v. Mount Sinai Hospital Medical Center of Chicago*
           *Your File No. 07-0079*

Dear Mr. Hebeisen:

    I am a physician duly licensed to practice medicine in all of its branches, specializing and board certified in vascular surgery. I have had significant experience with the standard of care, methods, procedures, and treatments relevant to the issues in the treatment of Lakitta Hernandez. I have devoted a majority of my work time to the practice of medicine in relation to the medical care and type of treatment at issue which gives rise to the medical problem of which Lakitta Hernandez complained. I have practiced within the last 5 years in the same area of healthcare or medicine that is at issue in this particular action. I have reviewed the records of Lakitta Hernandez from Mt. Sinai Hospital, Holy Cross Hospital and Mt. Sinai Medical Group.

    On August 30, 2005, Lakitta Hernandez presented to Mt. Sinai Hospital at 10:43 p.m. with complaints of right foot pain, numbness and a bluish discoloration. Exam of the right lower extremity showed foot cold, bluish and dusky, no palpable or Doppler pulses in the right foot. She was diagnosed with right posterior tibial artery occlusion. She was given pain medications and Heparin in the emergency room and admitted to the hospital.

    On August 31, 2005, Lakitta underwent an angiogram of the right lower extremity at ~0900-1152 which showed a thrombus at the site of her August 8, 2005 cardiac catheterization that extended to the right lower extremity with 100% occlusion. She underwent right lower extremity PTA tibio-peroneal trunk; Possis mechanical thrombectomy and angioplasty performed by Sandeep Khosla, M.D. The right foot remained pale, cool and dusky. Later that afternoon, Lakitta underwent surgery performed by Elizabeth Clark, M.D. for right lower extremity ischemia and cold pulseless right foot and severe pain. The surgery involved right lower extremity above/below-knee popliteal exploration, arteriotomy, thrombectomy, intra-op angiogram, right dorsalis pedis artery exploration. A specimen of thrombus from tibio-peroneal trunk was obtained. At the end of the surgery, the right foot was noted to be warmer with improved capillary refill (~3 seconds) from pre operative exam. Doppler signals were very difficult to obtain. She was given 3 units of blood and a Heparin drip was started.

    After the surgery, Lakitta's circulation remained compromised. She had ischemic changes to the right foot, status post embolization and thrombosis of the infra-popliteal, tibial peroneal trunk, following cardiac catheterization with failure of revascularization despite intra operative thrombectomy, heparinization, thrombolytic therapy (Urokinase x 24 hrs) and intervention AngioJet (in cath lab) and thrombectomy attempts in both the cardiac cath lab and IR suite had progressive ischemic changes and increasing white blood cell count with impending

1

gangrene. On September 2, 2005, Lakitta underwent surgery for right below-the-knee amputation performed by Elizabeth Clark, M.D.

On September 7, 2005, Lakitta fell on to the right stump and developed traumatic dehiscence of right below-the-knee amputation incision with blistering to the posterior flap. On September 8, 2005, Lakitta underwent surgery for debridement and revision of residual limb. Lakitta developed epidermolysis to full-thickness skin loss with purulent drainage and necrotic tissue. On September 13, 2005, Lakitta underwent surgery for right above the knee amputation. She was given blood products.

On September 17, 2005, she was transferred to Schwab for rehabilitation. Lakitta Hernandez underwent extensive rehabilitation. She was treated for sepsis, adult respiratory distress syndrome, pneumonia, right thigh fluid collection and urinary tract infection. She underwent surgery for a tracheostomy due to respiratory failure.

Based upon my review of the aforesaid records and my training and experience, it is my opinion that a reasonable and meritorious cause exists for the filing of an action against MOUNT SINAI HOSPITAL MEDICAL CENTER OF CHICAGO because its nursing staff was negligent and failed to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified nurses on September 7, 2005, as follows:

a.  Failed to keep LAKITTA HERNANDEZ supported when ambulatory;

b.  Failed to prevent LAKITTA HERNANDEZ from falling;

c.  Was otherwise careless and negligent.

The aforesaid negligent acts and omissions were a cause of injury to LAKITTA HERNANDEZ, including her above-knee amputation of her right leg and the associated complications, rehabilitation and recovery from these surgeries.

My opinions are subject to modification upon review of further materials.

Very truly yours,

Preston Flanigan, M.D.
1140 W. La Veta Avenue, # 850
Orange, CA 92868
California License # G63532

2